■ JOSEPH ZANGHI et al., Respondents, v. STATE OF NEW YORK, Appellant. (Claim No. 53087.) — Appeal from a judgment in favor of claimant, entered November 26, 1973, upon a decision of the Court of Claims. On May 8, 1970, pursuant to section 30 of the Highway Law, the State appropriated 22.684 acres in fee, and applied permanent easements for slopes to 1.24 acres in strips along the proposed improvements of claimants' property situate in the Town of Brookhaven, Suffolk County. The purpose of the appropriation was for the construction of two service roads, one running notherly and one running southerly, connecting with the main highway known as Sunrise Highway. The property prior to the taking consisted of 80.5 acres of unimproved, vacant land with frontage of 2,004 feet, generally at grade, on a four-lane divided county highway known as the East Moriches-Riverhead Road. The property was wooded, with a rolling terrain,

and no serious defects in grade. The property was zoned "C" Residence Use District, which had a building lot requirement of 9,000 square feet and frontage of 75 feet. The appropriation split the property into two parcels: one, Parcel A having a remainder acreage of 48.797 acres, and the other, Parcel B with 9.053 acres. By reason of the appropriation, Parcel A had a frontage on the North Service Road of 1,512 feet of which only 445 feet were on grade, and Parcel B had a frontage on the South Service Road of 1,194 feet of which only 275 feet were on grade. Claimants' appraiser testified that the highest and best use of the subject property prior to the appropriation was for a residential subdivision. In valuing the property, he used the market data or sales comparison approach, and relied mainly on three sales of vacant land in the general area of the subject property. He adjusted each sale for comparison purposes resulting in a valuation of $5,500 per acre for the parcel prior to the appropriation or a total value, before taking, of $442,750. He testified that after the appropriation, the highest and best use of Parcel A was for residential development, and for Parcel B was as country land. He testified that by reason of the appropriation, the value of the land in Parcel A was reduced to $3,500 per acre, and in Parcel B was reduced to $1,000 per acre making a total after value of $180,000 resulting in damages of $262,750 which he allocated to direct damages of $131,600 and consequential damages of $131,150. The State's appraiser stated the highest and best use of the subject property was residential subdivision. He also adopted the market data approach and used comparable sales, two of which were the same that claimants' appraiser had used. He estimated that the before value was $4,500 per acre for a total value before the taking of $361,350. He valued Parcel A after the taking with a value per acre of $5,000 on the ground that Parcel A had been enhanced by reason of additional frontage, allowing a reduction in the total of $3,150 for the damage caused by the permanent easement. His total after value for Parcel A was $239,900. As to Parcel B, the State's appraiser found an after value per acre of $4,500, allowed damages by reason of the easement of $1,900, resulting in total value after the taking for Parcel B of $38,600. He testified that the value of the fee taking was $102,100 for 22.684 acres at $4,500 per acre and $5,050 for the permanent easements resulting in total damages of $107,150. The court found that the highest and best use of the property before the appropriation was for "residential subdivision consonant with the existing zoning", and that Parcel A retained the same highest and best use after the taking, but that Parcel B after the taking had a highest and best use of "very limited residential development, not residential subdivision; or, for assemblage sale to an adjoining property owner." The court placed particular weight on the two sales used by both appraisers and found that the subject property had a value of $5,200 per acre prior to the taking, or a total before value of $418,776. The court found an after value of $4,200 per acre for Parcel A and $2,000 per acre for Parcel B, and a nominal market value for the acreage subject to the easements of $248, making a total after value of $219,787. The court awarded damages in the sum of $198,992 of which $123,782 was direct damages and $75,210 was consequential damages. Appellant contends that the court's valuation of the subject property on the basis of residential development was error since the appraisers referred to the highest and best use as a potential residential subdivision. Although claimants' appraiser in his appraisal report refers to the property as a potential residential subdivision, at the trial he emphatically testified that the highest and best use would be for a residential subdivision, and that the highest and best use for Parcel A, after the taking, was "still for a residence subdivision". Likewise, the State's appraiser testified that before

the taking, the highest and best use of the property was "residential subdivision". Appellant attempts to interpret the word "potential" as "future" which is not the situation as it was presented in the testimony. The highest and best use of vacant land is potential until the property is actually utilized. In dealing with raw acreage in a location where population growth is present or expected, and where residential zoning already exists, the property was properly valued as raw acreage based on similar comparables. The case of *Liere* v. *State of New York* (39 A D 2d 980), relied upon by appellant, is not controlling here. In that case farm land was involved and had been utilized as a working farm for many years prior to the taking. This court held that the appraisers' method of valuation was improper because they had valued the property on the basis of a future use stating: "Implicit in their finding of an interim use is that at the time of the taking there was no market for the property on the basis of their respective future use. In fact, each stated that there would be no market for the property for other than farm purposes for several years." Considering what both appraisers stated in their testimony, and the application of the adjusted comparables, the court's finding of residential subdivision, with no mention of any alleged future use and no adjustment for any alleged future use, was a proper finding supported by the evidence of the true value of the land appropriated as of the date of the taking. Appellant further contends that by reason of the appropriation, Parcel A was enhanced in value by new and additional frontage on the service road, and that the enhancement offset any consequential damages to the remainder, and that the trial court failed to give consideration to that fact in arriving at consequential damages. Respondent contends that if any benefits were derived by the new frontage, that it was very limited and far outweighed by the factors which reduced the quality of the remainders as residential subdivision property. The court, however, did consider all of the elements as they related to value and stated: "The addition of useable frontage along Parcel 'A' increased the value of that parcel. However, the remaining highly irregular shape of this parcel and the severe slopes to which the south portion of the parcel were subjected, substantially outweighed this increase in value." In our opinion, the trial court's findings as to direct and consequential damages, being within the range of the testimony, are correct and should be affirmed. We have considered the other issues raised by appellant, and find that they are without merit. Judgment affirmed, with costs. Staley, Jr., J. P., Sweeney, Kane, Main and Reynolds, JJ., concur.